UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------x
JOE SIMON-WHELAN, Individually And On
Behalf Of All Others Similarly Situated,

        Plaintiffs,

-v-                                                          No.  07 Civ. 6423 (LTS)

THE ANDY WARHOL FOUNDATION FOR
THE VISUAL ARTS, INC., THE ESTATE OF
ANDY WARHOL, VINCENT FREMONT,
Individually and as Successor Executor for the
Estate of Andy Warhol, VINCENT FREMONT
ENTERPRISES, THE ANDY WARHOL ART
AUTHENTICATION BOARD, INC.,
JOHN DOES 1-20, JANE DOES 1-10, and
RICHARD ROES 1-10,

        Defendants.
----------------------------------------------------------x

## OPINION AND ORDER

        Plaintiff Joe Simon-Whelan ("Simon-Whelan" or "Plaintiff") brings this action against the Andy Warhol Foundation for the Visual Arts, Inc. (the "Foundation"), the Estate of Andy Warhol (the "Estate"), Vincent Fremont ("Fremont"), individually and in his capacity as Successor Executor of the Estate, Vincent Fremont Enterprises ("VFE"), the Andy Warhol Authentication Board, Inc. (the "Board"), John Does 1-20, Jane Does 1-10 and Richard Roes 1-10 (collectively, "Defendants").  Plaintiff claims, on behalf of himself and a putative class of art buyers who have allegedly purchased Warhol works at artificially inflated prices, that the defendants have violated the federal Sherman Anti-Trust Act and New York's Donnelly Act by engaging in a conspiracy to restrain and monopolize trade in the market for Warhol works. Plaintiff asserts a further individual and class claim for unjust enrichment (relating to the allegedly

artificially high prices of Warhol works), individual claims for false advertising and publicity in violation of the federal Lanham Act (relating to the denial of the authenticity of a work owned by Plaintiff), fraud (based on allegations that certain defendants induced Plaintiff to submit his work to the Board and to sign a general release and convenant not to sue in connection with such submissions (the "Submission Agreement")), and an individual and class claim for a declaratory judgment invalidating the Submission Agreement.

Defendants move to dismiss all of Plaintiff's claims. The Court has reviewed thoroughly all of the parties' submissions and arguments in connection with the claims. For the reasons stated below, Defendants' motion to dismiss is granted in part and denied in part.

BACKGROUND

The Amended Class Action Complaint (the "Complaint") includes the following relevant allegations.

The Estate is located in New York and was determined to have a fair market value just below four hundred million dollars. (Compl. at ¶¶ 19, 43.) The Estate originally owned close to 100,000 works of art by Andy Warhol. (Id. at ¶ 38.) Originally, the Estate's executor was Frederick Hughes ("Hughes") and Fremont was named as alternate executor. (Id. at ¶¶ 28, 36.) The Foundation is a not-for-profit charitable trust incorporated in the State of New York. (Id. at ¶ 18.) Prior to the creation of the Foundation, Freemont oversaw the sale of Warhol's paintings. (Id. at ¶ 3.) Currently, Fremont is the exclusive sales agent for the Foundation's Warhol paintings. (Id. at ¶ 51.) VFE is a New York corporation, with its principal place of business being in New York. (Id. at ¶ 21.) The Board is a not-for profit New York corporation, with its principal place of business in New York. (Id. at ¶ 22.) The Board is responsible for authenticating the works of Andy Warhol. (See id. at ¶ 68.) John Does 1-20 are past and present officers of the Foundation.

(Id. at ¶ 23.)  Jane Does 1-10 are past and present members of the Board.  (Id. at ¶ 24.)  Richard Roes 1-10 are past and present agents of the Foundation and/or Board.  (Id. at ¶ 25.)

The Conspiracy

Plaintiff alleges that the Defendants have, for a period of twenty years, conspired to control the market for Andy Warhol artwork.  (Compl. at ¶ 1.)  The Foundation and the Board are allegedly the central actors in the conspiracy.  (Id. at ¶ 9.)  According to Plaintiff, Defendants have complete control over the authentication of Warhol artwork by virtue of the Board's status as sole recognized authentication authority for Warhol works and the Foundation's publication of an official catalogue of Warhol works.  (Id. at ¶ 17.)  Defendants employ two methods for authenticating Warhol artwork.  (Id. at ¶ 65.)  The first is a system of Board ratings of individual works as by Warhol, not by Warhol, or works as to which the Board expresses no opinion at the time.  (Id. at ¶ 64-65.)  The second is informal authentication by virtue of inclusion in the Warhol Catalogue Raisonné (the "Catalogue").  (Id.)  The Catalogue, published by the Foundation, is an allegedly comprehensive listing of all authentic Warhol artwork in existence.[1]  (Id.)

According to Plaintiff, the Board has denied the authenticity of works that were previously owned by the Estate and stamped with serial numbers from the Estate (id. at ¶ 86), routinely denies the authenticity of a certain percentage of Warhols, particularly when several from the same series are submitted (id. at ¶ 87), has denied authentication as a means of retaliation (id. at ¶¶ 83-85), has approached owners of Warhols to "lure" them into submitting their works for authentication (id. at ¶¶ 119, 185), and changes its authentication policies when the change suits the Board's financial interests (id. at ¶ 89).  Plaintiff alleges that Defendants use their control over

---

[1]   The Catalogue Raisonné recites that a fourth volume is reserved for newly found works, revised, updated and newly found information.  (Reply Brief at 18, n.2).

the authentication methods to create a scarcity in the market for Warhol artwork and inflate the value of the Warhol works in the Foundation's possession.  (Id. at ¶¶ 17, 214.)

At some time between 1988 and July 1990, the Estate implemented a policy requiring persons seeking authentication of works to sign a "Submission Agreement."  (Id. at ¶ 91.)  The Board has continued the Estate's policy of requiring persons submitting works for authentication to sign the Submission Agreement.  (Id. at ¶ 97.)  The Submission Agreement includes the following clause:

> By signing this letter Owner:
>
> . . .
>
> (iii) hereby indemnifies the Authentication Board, the Foundation, the Estate of Andy Warhol (the "Estate"), and all members of and officers, directors, agents, representatives, employees and others at any time acting for the Authentication Board, the Foundation or the Estate (collectively, the "Indemnitees"), and agrees to defend and hold each Indemnitee harmless and releases, waives and covenants not to sue any Indemnitee, based upon any claim or liability asserted (a) by Owner or by any person or entity acquiring the Work, or any interest in the Work from Owner (a "Buyer") or any person or entity from whom Owner or any predecessor in interest acquired the Work which is based directly or indirectly on the legend or endorsement, if any, affixed to the Work, or on any letter herein referred to, or any other action by the Authentication Board or any other Indemnitee in connection herewith, including without limitation any claim that the opinion expressed therein is not correct, or (b) by any other person to whom Owner or the Buyer has made any statement or representation respecting the authenticity the Work or any action of the Authentication Board or any other Indemnitee in connection therewith, and hereby agrees to pay or reimburse each Indemnitee for all costs and expenses incurred by the Indemnitee in connection with any such asserted claim or liability, including without limitation the fees and expenses of legal counsel.  (Compl. at ¶ 99, Ex. B at 3.)

Double Denied

Plaintiff originally purchased a painting (referred to herein and in the Complaint as Double Denied) for $195,000 in 1989.  (Id. at ¶ 19.)  According to Plaintiff, the painting is one of

several created in August 1965 at Warhol's direction from an acetate personally created and chosen by Warhol.  (Id.)  Plaintiff alleges that the painting had previously been authenticated by the Foundation and the Estate, including by Hughes and Fremont, and had passed through several major dealers, each of whom had carefully vetted the painting's provenance.  (Id.)

Plaintiff offered to sell his painting in or about July 2001.  (Id. at ¶ 148.)  Plaintiff alleges that, from July through December 2001, Fremont repeatedly urged Plaintiff, by telephone, email and in a face-to-face meeting in Los Angeles, to submit his painting to the Board.  (Id. at ¶ 149.)  An interested buyer was also informed by the Board that it would not stand by the prior authentications; the painting would have to be submitted to the Board.  (Id. at ¶ 151.)  Plaintiff submitted Double Denied for authentication on December 20, 2001, and signed a copy of the Submission Agreement dated December 21, 2001, in connection with the submission.  (Compl. at ¶ 153, Ex. B.)  The Board stamped the painting "Denied."  (Id. at ¶¶ 20, 155.)  After the Board's initial determination, Plaintiff was informed that he was welcome to resubmit the painting with additional documentation.  (Id. at ¶ 158.)  Fremont urged him to resubmit the painting with additional documentation.  (Id. at ¶ 159.)   Plaintiff spent more than a year documenting the painting's origin and history and resubmitted the painting with additional documentation in February 2003.  (Id. at ¶¶ 161-62.)

Plaintiff alleges that, on or about February 12, 2003, he was informed by Paul Morissey that Fremont had told Morissey that the painting had been denied again.  (Id. at ¶ 163.)  By letter dated July 14, 2003, the Board notified plaintiff that it had rejected Double Denied a second time.  (Id. at ¶ 165.)  The Board subsequently issued a letter, dated May 18, 2004, purporting to explain the basis of the Board's denial.  (Id. at ¶¶ 168-72; Compl. Ex. E.)  Plaintiff alleges that the Board fraudulently denied the authenticity of Double Denied and that the denials

were a foregone conclusion.  (Id. at ¶¶ 247, 249.)  Plaintiff alleges that, as a result of this second rejection, Plaintiff was unable to sell any of the Warhols that he owned without first submitting them to the Board and that he was ultimately forced to sell his Warhols through third-parties at a fraction of the price.  (Id. at ¶ 166.)  Further, Plaintiff alleges that, by excluding Double Denied from the Catalogue, the Defendants have represented that the painting is a fake, thus depressing its market value.  (Id. at ¶ 237.)

        Plaintiff brings this action requesting a declaratory judgment that the Submission Agreement is unenforceable, as well as injunctive, declaratory and monetary relief in respect of his claims under Section One and Two of the Sherman Act, the New York Donnelly Act, the Lanham Act, and for fraud and unjust enrichment.  Defendants seek dismissal of Plaintiff's claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, arguing that the claims are barred by the release and covenant not to sue provisions of the Submission Agreements, that the allegations of the Complaint are insufficient to plead plausibly Plaintiff's antitrust claims because, inter alia, the claims are time barred and Plaintiff lacks standing to assert them, that the Complaint's Lanham Act and fraud allegations are likewise insufficient to meet the applicable pleading standards, and that the Complaint fails to state a claim for relief for unjust enrichment as against Fremont as "successor executor."

DISCUSSION

Rule 12(b)(6) and 9(b) Standards

        In deciding a motion to dismiss a complaint for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must "accept as true all factual statements alleged in the complaint and draw reasonable inferences in favor of the non-moving party."  McCarthy v. Dunn & Bradstreet Corp., 483 F.3d 184, 191 (2d Cir. 2007) (internal citations

omitted). The issue is whether the plaintiff is entitled to offer evidence to support his claims. Hudson Valley Black Press v. Internal Revenue Service, 307 F. Supp. 2d 543, 545 (S.D.N.Y. 2004). Nevertheless, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, __ S.Ct. __, 2009 WL 1361536, at *12 (May 18, 2009) quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Iqbal, 2009 WL 1361536, at *12 (internal quotations and citations omitted). This Twombly standard applies to all civil actions. Id. at *16.

   Rule 9(b) of the Federal Rules of Civil Procedure requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b). Particularity requires the plaintiff to "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." Stevelman v. Alias Research, Inc., 174 F.3d 79, 84 (2d Cir. 1999) (internal citations omitted). The issue is whether the allegations provide fair and reasonable notice of the time, place, speaker, and content of the alleged misrepresentation or omission. Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1128-29 (2d Cir. 1994).

Validity of the Submission Agreements

   Defendants argue that Plaintiff has failed to state a claim for invalidation of the Submission Agreements he signed in connection with the Board's reviews of Double Denied, and that his entire Complaint should be dismissed, because the Submission Agreements include, inter alia, a provision in which Plaintiff "releases, waives and covenants not to sue any Indemnitee . . .

based upon any claim or liability asserted (a) by [Plaintiff] or by any person or entity acquiring the Work, or any interest in the Work from [Plaintiff] . . . which is based directly or indirectly on the legend or endorsement, if any, affixed to the Work, or on any letter herein referred to, or any other action by the Authentication Board or any other Indemnitee in connection herewith, including without limitation any claim that the opinion is not correct." (Compl., Ex. B, at 3.)

The Complaint's allegations of fraud and wrongdoing in connection with the solicitation of the Submission Agreements are sufficient to state plausibly his claim for declaratory relief invalidating the exculpatory provisions of the agreements. A party may not invoke such an agreement to insulate itself from intentional wrongdoing, such as that alleged in this action. See Kalisch-Jarcho, Inc. v. City of New York 58 N.Y.2d 377, 384-85 (N.Y. 1983) ("[A]n exculpatory agreement, no matter how flat and unqualified its terms, will not exonerate a party from liability under all circumstances. Under announced public policy, it will not apply to exemption of willful or grossly negligent acts . . . [and] an exculpatory clause is unenforceable when, in contravention of acceptable notions of morality, the misconduct for which it would grant immunity smacks of intentional wrongdoing. This can be explicit, as when it is fraudulent, malicious or prompted by the sinister intention of one acting in bad faith." (internal citations omitted)). Plaintiff has sufficiently alleged that he was fraudulently induced into signing the submission agreements. See Nurnberg v. Hobo Corp., 30 A.D.3d 359, 360 (1st Dep't 2006) ("A party asserting fraudulent inducement is required to identify a material representation, known to be false and made with the intention of inducing reliance, and actual reliance resulting in damages."); see also Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Wise Metals Group, LLC, 19 A.D.3d 273, 275 (1st Dep't 2005) ("A contract induced by fraud, however, is subject to rescission, rendering it unenforceable by the culpable party."). The Complaint includes allegations that the Submission Agreements were

utilized in an effort to conceal, and to protect Defendants from recriminations arising from, intentional, illegal action.  Taking all inferences in Plaintiff's favor, he has sufficiently alleged facts in support of his claim for declaratory relief at this stage of the proceedings and Defendants' motion must be denied insofar as it seeks the dismissal of Plaintiff's declaratory judgment claim concerning the Submission Agreements.

Sherman Antitrust Act and New York Donnelly Act Claims

Plaintiff asserts claims under Section One of the Sherman Act, which prohibits combinations in restraint of trade,[2] and under Section Two of that Act, which prohibits monopolization.[3]  Plaintiff also asserts a claim under New York State's antitrust statute – the Donnelly Act – which prohibits contracts or agreements in restraint of trade and monopolization.  See N.Y. Gen. Bus. Law §§ 340 et seq.  Defendants argue that Plaintiff has failed plausibly to plead a conspiracy and that the Complaint must therefore be dismissed under Twombly, and further argue that Plaintiff lacks standing, and that his antitrust claims are time-barred.

The New York Court of Appeals has held that the New York Donnelly Act should generally be construed in light of Sherman Act precedents.  X.L.O. Concrete Corp. v. Rivergate Corp., 83 N.Y.2d 513, 518 (1994) ("This Court has held that the Donnelly Act, having been modelled on the Federal Sherman Act of 1890, should generally be construed in light of Federal precedent and given a different interpretation only where State policy, differences in the statutory

---

[2]  "Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States . . . is declared to be illegal."  15 U.S.C.A. § 1 (West 2009).

[3]  "Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce . . . shall be deemed to be guilty of a felony . . . ."  15 U.S.C.A. § 2 (West 2009).

language or the legislative history justify such a result." (internal quotations omitted)). Accordingly, the Court analyzes Plaintiff's Sherman Act and New York Donnelly Act claims together.

Plausibility of Plaintiff's Antitrust Allegations

Defendants argue that Plaintiff has failed to plead plausibly his antitrust allegations. Having considered carefully all of Defendants' arguments, the Court disagrees. Plaintiff has alleged a conspiracy involving the only two entities authenticating Warhol works, the Foundation (through the Catalogue Raisonné) and the Board (through direct authentication), to restrict artificially competition in the market for authentic Warhols. This unreasonable restraint in violation of Section One of the Sherman Act, it is alleged, raises the prices of the Foundation's Warhol works and ensures that galleries and museums choose Foundation works (so as to limit the risk that their authenticity will later be denied by the Board). Plaintiff has also alleged facts indicative of anticompetitive conduct with a specific intent to monopolize and a dangerous probability of achieving monopoly power in violation of Section Two of the Sherman Act.

Plaintiff asserts that the Board is completely dominated and controlled by the Foundation (Compl. at ¶ 66), and that the Foundation uses the Board to remove competing Warhols from the market in an attempt to monopolize the market (Compl. at ¶¶ 13-16). Plaintiff has alleged sufficient facts in support of the illegal restraint on trade and monopolization claims to satisfy the plausibility standard. For example, Plaintiff alleges that the Board has made unsolicited suggestions that owners of purported Warhol works submit their works for authentication; that the Board's authentication policies, to the extent that they exist, are applied inconsistently and allow the Board to reverse prior determinations when doing so would further the conspiracy; that the Board has refused to authenticate works that the Foundation previously attempted, unsuccessfully, to purchase; that the Board has denied the authenticity of works that others associated with the

Estate and the Foundation have previously authenticated; and that, unlike other authentication boards, which are composed of well-qualified and well-known independent experts, the Board is populated by individuals who lack expertise in the authentication of Warhol works and who are not independent of the Foundation.  (Compl. at ¶¶ 8, 74-5, 82-85, 126, 130, 155.)

Plaintiff has also sufficiently identified a relevant geographic and product market in which trade was allegedly unreasonably restrained or monopolized, as required to state a claim under Sections One and Two of the Sherman Act.  See Kramer v. Pollock-Krasner Foundation, 890 F. Supp. 250, 254 (S.D.N.Y. 1995).  "In determining the relevant market, the general rule is that commodities reasonably interchangeable by consumers for the same purposes make up that part of the trade or commerce monopolization of which may be illegal."  Vitale v. Marlborough Gallery, No. 93 Civ. 6276, 1994 WL 654494, at *3 (S.D.N.Y. July 5, 1994) (internal quotations omitted).  A narrowly defined submarket can be a relevant geographic product market.  Kramer, 890 F. Supp. at 254.  Plaintiff's allegations of a distinct submarket in the offering and sale, at auction or otherwise, of Andy Warhol works within the modern and contemporary art market are sufficient in this regard. See Vitale, 1994 WL 654494, at *4 ("Examining plaintiff's assertion of a submarket in light of the above criteria, the Court finds, for the purposes of this motion to dismiss, that Jackson Pollock paintings may constitute a submarket, the monopolization of which may be unlawful under 15 U.S.C. § 1 or § 2.").

Plaintiff's Antitrust Injury

Defendants argue that Plaintiff does not have standing to assert his antitrust claims because he has not suffered an antitrust injury in connection with either his purchase of Double Denied or the Board's denial of the work.  "An antitrust injury is an 'injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful.'"

Paycom Billing Services, Inc. v. Mastercard Intern., Inc., 467 F.3d 283, 290 (2d Cir. 2006), quoting Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc., 429 U.S. 477, 489 (1977).

Plaintiff's allegation that the double-stamping of "Denied" on his artwork in furtherance of the alleged antitrust conspiracy has prevented him from competing as a seller in the lucrative market for authentic Warhols is sufficient to frame an antitrust injury.  See, e.g., Daniel v. American Bd. of Emergency Medicine, 428 F.3d 408, 439 (2d Cir. 2005) (although plaintiffs lacked standing in that case, the Second Circuit recognized that it is possible that a would-be competitor could demonstrate standing to challenge an exclusionary scheme that precludes him from entering the market).

Plaintiff has not, however, alleged that he has suffered any injury arising from the alleged price-inflationary aspects of the conspiracy.  Plaintiff did not purchase Double Denied from the Foundation, and nowhere in the Complaint does Plaintiff allege that Double Denied was ever sold by the Foundation or recognized by the Board as authentic.  Plaintiff has thus failed to plead facts sufficient to demonstrate that he has standing to complain of any price-inflation aspect of the alleged antitrust conspiracy and the Complaint will be dismissed to the extent Plaintiff's claims are premised on allegations that Defendants' actions have artificially inflated prices for Warhol works.  Those claims will be dismissed for the further reason that, as explained below, any claim that Plaintiff might possess for damages in connection with his purchase of Double Denied is time barred.

Statute of Limitations

The statute of limitations for federal antitrust claims is four years.  See 15 U.S.C. § 15b.  The statute of limitation for New York Donnelly Act claims is also four years.  N.Y. Gen. Bus. Law §§ 340(5); Matter of Crowley Foods, Inc. V. Lefkowitz, 75 A.D.2d 940, 942 (3d Dep't

1980). Defendants argue that Plaintiff's antitrust claim must be dismissed in its entirety as time barred because, to the extent it is premised on his 1989 purchase of Double Denied, it was brought some 14 years too late and, to the extent it is premised on exclusion of Double Denied from the market for authentic Warhol works, it accrued in 2002 when the painting's authenticity was first denied.

As explained above, Plaintiff's allegations are insufficient to demonstrate that he has any claim against Defendants relating to the purchase price of his painting. Nor has he alleged facts that would warrant a finding of fraudulent concealment that would defeat the limitations bar even if he were able to articulate an antitrust claim premised on the price he paid for Double Denied. In order to toll the statute of limitations on the basis of fraudulent concealment, Plaintiff must show that: "(1) the defendant wrongfully concealed material facts relating to defendant's wrongdoing; (2) the concealment prevented plaintiff's discovery of the nature of the claim within the limitations period; and (3) plaintiff exercised due diligence in pursuing the discovery of the claim during the period plaintiff seeks to have tolled." Corcoran v. N.Y. Power Auth., 202 F.3d 530, 543 (2d Cir. 1999) (internal quotation marks omitted). The plaintiff has the burden of demonstrating the appropriateness of equitable tolling, Boos v. Runyon, 201 F.3d 178, 185 (2d Cir. 2000), and "must plead each of these elements with particularity as required by Rule 9(b) of the Federal Rules of Civil Procedure," National Group for Communications and Computers Ltd. v. Lucent Techs. Inc., 420 F. Supp. 2d 253, 265 (S.D.N.Y. 2006). "[I]n order to toll the statute of limitations under the fraudulent concealment doctrine, Plaintiffs must also allege that they were ignorant of the antitrust violation and that their ignorance was not the result of a lack of due diligence." In re Issuer Plaintiff Initial Public Offering Antitrust Litigation, No. 00 Civ. 7804, 2004 WL 487222, *4 (S.D.N.Y. March 12, 2004); see also Klehr v. A.O. Smith Corp., 521 U.S. 179, 194 (1997) ("a

plaintiff who is not reasonably diligent may not assert 'fraudulent concealment.'").  Plaintiff's Complaint does not proffer facts sufficient to demonstrate that his discovery of a price-related claim was prevented by Defendants' concealment of wrongful actions during the limitation period, nor does it demonstrate the exercise of due diligence during the period for which Plaintiff seeks to have the limitations bar tolled.  Accordingly, this aspect of Plaintiff's antitrust claim will be dismissed.

However, the Court finds that Plaintiff's antitrust monopolization and market restraint allegations, insofar as they are based on the allegedly exclusionary impact of the Board's second denial of Double Denied, are not time-barred.  Although the Board's original denial of Plaintiff's painting occurred more than five years before Plaintiff brought this action, Plaintiff has alleged facts sufficient, at this stage, to invoke the continuing conspiracy exception based on the Board's second denial.  To come within the continuing conspiracy exception, "a plaintiff must allege that she has been injured by continued, separate antitrust violations within the limitations period."  Vitale v. Marlborough Gallery, No. 93 Civ. 6276, 1994 WL 654494, at *5 (S.D.N.Y. July 5, 1994) (internal quotations omitted).  The continuing conspiracy exception will start the statute of limitations anew if the plaintiff alleges "an overt act which (1) is a new and independent act that is not merely a reaffirmation of a previous act; and (2) inflicts new and accumulating injury on the plaintiff."  Id. (internal quotations omitted).  Construing the allegations in the light most favorable to Plaintiff, the Court finds that Plaintiff has alleged sufficiently that the second denial was not a mere reaffirmation of the first.  Plaintiff alleges that Defendants not only permitted, but encouraged, him to resubmit the painting with additional documentation and that he suffered additional, distinct injury as a result of the second denial.

Therefore, Plaintiff's individual Sherman Antitrust and New York Donnelly Act

claims are dismissed with prejudice to the extent that they are based on his purchase of Double Denied because they are time barred, but Defendants' motion is denied to the extent that Plaintiff's federal and Donnelly Act monopolization and market restraint claims are based on the Board's rejection of Double Denied as an authentic Warhol.

Lanham Act Claim

Plaintiff asserts a violation of section 43(a) of the Lanham Act, which prohibits the use of false designation of origin, false or misleading description of fact or false or misleading representation of fact that is likely to cause confusion in commerce or in commercial advertising.[4] In addition to arguing that Plaintiff is barred from bringing these claims insofar as they are based on Defendants' stamping of Plaintiff's painting "Denied" because the Submission Agreements included an acknowledgment that such a stamp could be affixed, Defendants argue that Plaintiff cannot assert a Lanham Act claim because the Act does not impose liability for statements of opinion, and that Plaintiff has not alleged a false statement in connection with commercial advertising as required by the "commercial advertising or promotion" prong of the Section 1125(a)(1).

As explained above, Plaintiff has alleged facts sufficient to state a claim for a

---

[4] "Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which– (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act." 15 U.S.C.A. § 1125 (a)(1)(A) & (B) (West 1998).

declaration that the Submission Agreements are not enforceable. Thus, dismissal of Plaintiff's Lanham Act claims on the basis of the acknowledgment in those agreements is not appropriate at this stage.

Plaintiff has also alleged sufficient facts to state a claim under the Lanham Act in connection with Defendants' letters. Although it is well established that a "statement of opinion is not actionable under the Lanham Act if it could not reasonably be seen as stating or implying provable facts about a competitor's goods or services," Boule v. Hutton, 328 F.3d 84, 93 (2d Cir. 2003), it is not clear, at this stage, that Defendants' letters were such mere statements of opinion. The Court cannot determine at this stage of the proceeding whether the Defendants' letters, although purporting to be opinions, could reasonably be seen as stating or implying provable facts about the authenticity of Double Denied. The Second Circuit's decision in Boule, which involved the resolution of such issues based on factual findings after a bench trial, is not to the contrary.

Additionally, to the extent that Defendants argue that Plaintiff has no claim based on Defendants' May 18, 2004, letter because he has conceded that descriptive statements in that letter were "literally true," Plaintiff has sufficiently alleged that the statements were nonetheless fraudulent and misleading. See Groden v. Random House, Inc., 61 F.3d 1045 (2d Cir. 1995) ("In order to be actionable under the Lanham Act, a challenged advertisement must be literally false or, though literally true, likely to mislead or confuse consumers." (emphasis added)).

Plaintiff has not, however, proffered allegations sufficient to frame a violation of the "commercial advertising or promotion" prong of the Lanham Act. "In this circuit, to constitute 'commercial advertising or promotion' under the Lanham Act, a statement must be: (1) commercial speech, (2) made for the purpose of influencing consumers to buy defendant's goods or services, and (3) although representations less formal than those made as part of a classic advertising

campaign may suffice, they must be disseminated sufficiently to the relevant purchasing public." Gmurzynska v. Hutton, 355 F.3d 206, 210 (2d Cir. 2004) (internal quotations omitted).  Although Plaintiff alleges that the Catalogue, which is published by the Foundation, is the only recognized means of authentication other than direct authentication by the Board, the Complaint does not proffer allegations as to Defendants' use of the Catalogue in connection with the commercial offer of their goods and services.

Thus, the Court finds that Plaintiff has sufficiently alleged violations of Section 43(a) of the Lanham Act in connection with Defendants' letters, but has failed to allege sufficient facts to plead a Lanham Act claim in connection with the exclusion of Double Denied from the Catalogue.

Fraud

Defendants contend that Plaintiff has failed to plead his fraud claim with particularity as required by Rule 9(b) and, thus, it should be dismissed.  See Fed. R. Civ. P. 9(b). Particularity requires the plaintiff to "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." Stevelman v. Alias Research, Inc., 174 F.3d 79, 84 (2d Cir. 1999).  The issue is whether the allegations provide fair and reasonable notice of the time, place, speaker, and content of the alleged misrepresentation or omission.  Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1128-29, 1130 (2d Cir. 1994).

Plaintiff has alleged fraud sufficiently in connection with the repudiation of Double Denied.  Plaintiff alleges that, in July 2001 and continuing through December 2001, Fremont intervened in Plaintiff's attempts to sell Double Denied and fraudulently induced Plaintiff to submit his painting to the Board for authentication.  Plaintiff further alleges Fremont was aware at the time

that the Board would deny the authenticity of Double Denied.  Plaintiff also alleges that, in February 2002, Fremont once again induced the Plaintiff to resubmit Double Denied, after conducting additional research, to the Board.  The Complaint alleges that Fremont made these statements with the knowledge that Plaintiff would rely on Fremont's statements and that a rejection by the Board was certain.  The Complaint also alleges that in February of 2002 the Board's agent, Claudia Defendi, urged Plaintiff to resubmit Double Denied despite knowing that a rejection from the Board was predetermined.  See International Motor Sports Group v. Gordon, No. 82709, 98 Civ. 5611, 1999 WL 619633, at *3 (S.D.N.Y. Aug. 16, 1999) (Rule 9(b) does not require "a plaintiff [to] plead dates, times and places with absolute precision, so long as the complaint gives fair and reasonable notice to defendants of the claim and the grounds upon which it is based").  Plaintiff's allegations of fraud in connection with the repudiation of Double Denied are sufficient under Rule 9(b) and Defendants' motion to dismiss Plaintiff's fraud claim is denied.

Unjust Enrichment Claim

Defendants' motion is denied as to Plaintiff's claim of unjust enrichment.  The claim is not implausibly pled, in that the Complaint includes allegations concerning, inter alia, Defendants' profiting at Plaintiff's expense.

Fremont's Official Capacity

Defendants' motion is also denied as to Plaintiff's claims against Fremont in his official capacity.  The Complaint alleges that Fremont is the "successor" executor of the Estate.  Defendants' arguments regarding the naming and appointment of the Estate's executor and Fremont's actual status can be addressed in an appropriate evidentiary context at a later stage of the proceeding.

CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss the Complaint is granted in part and denied in part. Plaintiff's antitrust claims are dismissed for lack of standing to the extent that they are premised on inflation of the prices of Warhol artwork. Plaintiff's Lanham Act claim is dismissed insofar as it is premised on the exclusion of <u>Double Denied</u> from the Catalogue Raisonné. Defendant's motion is denied in all other respects. The stay of discovery is lifted and the parties are directed to confer and to file an updated Joint Preliminary Pre-Trial Statement one week before the next conference in this action, which the Court will hold on Tuesday, June 30, 2009, at 3:00 p.m. The Clerk of Court is respectfully requested to terminate docket entry no. 21.

SO ORDERED.

Dated: New York, New York
May 26, 2009

LAURA TAYLOR SWAIN
United States District Judge